Thank you, Your Honor. Good morning. May it please the court. My name is Jim Voris. I'm going to be arguing today on behalf of the appellant, the San Joaquin County Employees Retirement Association. And for purposes of this argument, for the sake of ease, I'm going to refer to my client as SJ Sara throughout the context instead of spelling out the whole name of my client. And with the court's permission, I would like to reserve two minutes for rebuttal. All right. Great. Thank you. The issue before this court is whether or not the district court dared when it granted summary judgment on behalf of travelers and against SJ Sara. And as the court noticed from the briefing, the issue that the court relied on was travelers' application of a prior impending litigation exclusion to deny coverage to SJ Sara for a piece of litigation that was filed in 2017. Now, this court should reverse the district court for at least three reasons. First, the and fundamental principles such as exclusions are to be read narrowly. Because this denial of coverage was based on an exclusion, it was travelers' burden to show with conclusive evidence that there was no possible coverage, that there was that there was an exclusion in all possible worlds, if you will. The district court's opinion turned that entire standard on its head by reading this exclusion broadly. Second, the district court also read the Oh, I'm sorry. What that what I understand that to mean is that is whether the underlying case could possibly evolve into one that would be covered. It's not that it's not that you say, well, are there different ways to read the preclusion or the exclusion? But it's how is it? How is the underlying case going to evolve? Or what is it? Is that basically right? I appreciate your honor, you are correct about that standard. That doesn't change the legal standard that exclusions themselves are to be applied narrowly. And that gets to a second point that I have about the interpretation of this exclusion, this prior pending litigation exclusion that precludes coverage for claims that are based upon or arise out of prior litigation was undue. That's to me how this whole case has gotten off balance, because it doesn't say based upon or arising out of prior litigation. This did arise out of prior litigation, but that's not what the provision says. It says based upon or arising out of any fact, circumstance, situation or event underlying or allegedly prior or pending civil litigation. And if you shorthand it, it seems to me you're shorthanding it against your interest. And that's how the district court got off in that direction. It is based, it did arise out of the earlier litigation, but it didn't arise out of anything that was alleged, or did it? I mean, that's the question. The question is, did it arise out of any fact, circumstance, situation, event or wrongful act underlying or alleged to the prior civil litigation? So, see, the way I tend to agree with Judge Berzon on that point, because this particular benefit that's being sued on was part of the settlement agreement, but it was really totally tangential to what the underlying lawsuit was about. I 100% agree, Your Honors. And we did make the point in our briefing about this requiring it be part of the facts underlying or alleged in the prior litigation. And my apologies for not stating that correctly there. But I agree with you. And I think that's an important distinction here. And I think it's also important to understand what I see as one of the primary problems with the district court opinion is ignoring the context. And even those cases that treat exclusions that have language that has a rising out of as part of the language and interpret that broadly, none of those cases involve public pension systems. It's a very, different agency. I don't know why that matters either. But what matters is a rising out of what? I mean, it could be broad, but a rising out of what? I agree. So the prior litigation, I'll jump forward in my outline. And the prior litigation, I agree with you, that arose from litigation that was filed after the California Supreme Court's decision in Ventura. And every county public pension system in the state was confronted with how it was going to apply that a number of them got sued. The facts underlying or alleged in that litigation were whether or not certain benefits were properly paid. The conduct that's alleged in the 2017 litigation, which is 20 years later relate to administrative reserve allocation decisions. And I think where Judge Mendez in the district court got it wrong is I think he applied an improper but for causation standard. Read from his opinion where he said when he was concluding what he thought was an incidental or slight relation, he said the 2001 settlement agreement doesn't exist unless there's a 1998 lawsuit and it just flows. That's about for causation standard. There's not a single California court that will read this arising out of language that broadly. And that highlights the critical distinction that I think your honors have hit upon. What you're looking at is the conduct that underlies both of these two lawsuits and it is completely distinguishable here. I think another problem that Judge Mendez in the district court had was the failure to consider the extrinsic evidence. I would ask your honor to consider the importance of the extrinsic evidence here because one thing that was not found or was not actually addressed in the district court opinion was the breadth of that 1998 litigation. I think that's why the extrinsic evidence is important in considering what the objectively reasonable expectations of S.J. Serra were in purchasing this policy. This is a fiduciary liability insurance policy. It is to cover S.J. Serra for lawsuits about breach of fiduciary duty. S.J. Serra has one job. It is to administer retirement benefits to its members. And this is a decades long obligation that it runs into that it needs to pay the retirement benefits for the members. It needs to pay the retirement benefits for the beneficiaries. What's distinct about the 1998 litigation or other public pension system litigation is the scope. Judge Mendez focused on not the facts underlined or alleged in the litigation, but he also focused on one particular benefit without looking at the fact that the 98 litigation and the in the system. And that's really important because you need to understand the implications of why. The settlement didn't, as I understand it, it was a settlement of the litigation, but like many settlements of litigation didn't just provide, didn't provide exactly what the plaintiffs were asking for. It just sort of redid the whole benefit system for this plan and provided somewhat more benefits of certain kinds to everybody, including people who weren't even affected by the earlier problem. Is that right? That is correct. And in fact, it also would address future members of the system, which adds to the complexity of the situation. Yeah, absolutely, Your Honor. And I think this is the cases that are relied on by travelers that refer to this type of language to read it broadly. LA Lakers or Sufi, they all still discuss the context, the context of the policy, the context of the policy, the purpose of purchasing that insurance, the extrinsic evidence, all to help the court attempt to understand the mutual intent of the parties or if there's some disagreement, what an objectively reasonable expectation would be for a policy. So in this situation, and I think the breadth of the 1998 litigation, SJCIRA's role and function and the breadth of the settlement agreement, frankly, all weigh in favor of coverage, because otherwise what you're saying is anything, any benefits related litigation that came after 2001 would be barred by a  result. That is the reason that SJCIRA purchased this fiduciary liability policy was to cover these types of claims. For example, is this what you're saying? What you're saying sounds a little kind of exalted, but is your understanding, for example, someone, there was a benefit that was provided for in this settlement agreement and somebody, some individual comes in and says, you didn't pay me this benefit and you were supposed to pay me the benefit, that he ran into the same problem. And you wanted coverage for that. You ran into the same problem. You run into the exact same problem. It was a point that we made in our briefing. As your honor pointed out, the 2001 settlement agreement adjusted the benefits that were paid to the entire system. It wasn't a direct correlation with benefits that had been paid before or not paid before 1998. This was a redo of how every member in the San Joaquin system was going to be paid. It is impossible then that a claim would come later that you couldn't refer back to that and apply a prior impending litigation exclusion. But more specifically, and you go to the provision, the facts alleged in this all had to do with how the 2001 agreement was administered, right? And had nothing to do with what happened before the any of the facts that were complained about that led to the I think it's even more attenuated than that. It's not actually the administrative overlap between the alleged facts, except for the fact that there is the existence of settlement. That is exactly right. Counsel, let me go back. I need to do a little housekeeping for my own thoughts in regards to this. And that is the fact that in one sentence, you try to tell us that if we reverse, you get to reinstate your bad faith and punitive damages claim. Now the trial court independently ruled in regards to those two issues. And other than just one short sentence, all you said is that, well, if we if we reverse, those become good claims. And I'm not sure I know of any law that says that since you didn't appeal those issues. And we intentionally did not appeal those issues. That resolves my problem. Okay, this comes out. I didn't want to spend the court's time if we had to decide those two issues. You did not you agree you did not appeal those. Yeah. All right. Thank you. 100% agree. And therefore, they're over. I mean, that sentence is incorrect. There's nothing left open. Okay, I you the judge ruled on two different reasons, one that they could not flow because there he had found there was no breach contract. Secondarily, he would have ruled on those bad faith claims. I will tell you, it's not our intention to pursue those bad faith claims. Punitive damage. Correct. So, you know, I see we've got we're running out of time here in three minutes. I think one other thing that I point out to your honors is we're talking about the prior impending litigation cases that are out there. I think what you find universally is that there is overlap in the facts. And as we've addressed during the course of this argument, there's no overlap between the facts that are underlined or alleged the 1998 litigation and the 2017 litigation. In that regard, I think all of those cases support SJ's service position. All right. Thank you, counsel. Mr. Boos. Thank you, your honors. Good morning. Nicholas Boos may please the court for defendant travelers casualty and surety company of America. Your honors, in light of your dialogue with SJ Sarah's counsel, I want to begin by first pointing out that the way under California law, as your honors know, the way insurance policies are interpreted is looking at the So, SJ Sarah has argued that there needs to be a substantial overlap between facts. Looking at the language itself is exactly what I think we should be doing. And the language itself uses the term arising out of but arising out of what? And it has to arise out of a fact, circumstance, situation, event, or wrongful act, underlying or alleged in the prior or civil claim. Now, tell me how this one does that. I understand that it depends on the settlement action, but does it depend on any in any way arising out of any fact, circumstance, situation? Let's not even talk about substantial overlap, any overlap. Yes. Fact, circumstance, situation, event, or wrongful act, underlying or alleged in any prior or pending civil criminal offense. Yes, absolutely. The first step when you do that is to define the term arising out of. No, I don't want to do that. I want to talk about any fact, circumstance. It has to arise out of something. So, here's the something. Any fact, circumstance, situation, event, or wrongful act, underlying or alleged in any prior or pending civil criminal, etc. Absolutely. In the 1998 action, the plaintiffs alleged that SJ Sarah miscalculated compensation earnable, which resulted in benefits that were owed being withheld. As a result of that dispute, which SJ Sarah denied that allegation, there was a 2001 settlement agreement. The 2001 settlement agreement had many different components, but the component at issue here is the component that pertains to people who retired between 1982 and 2001. So, that's an existing class of people at the time the settlement agreement was entered into. And to resolve the disagreement about whether or not benefits had been withheld, the settlement agreement provided for a supplemental benefit to be paid to resolve that disagreement about whether benefits have been withheld or not. Then you fast forward and there's litigation contending, hey, SJ Sarah, you had an settlement agreement to pay me these benefits that resolved my allegation from 1998, but you didn't. And so, I'm suing you for breach of contract. There's absolutely a very close relationship between the allegation and the 1998 action of a withholding of benefits and the current action, which is all about... An alleged violation of a completely different provision. No, it's not a completely different... Well, it's a provision that was put into effect because of the earlier litigation, but it doesn't bear any resemblance to what the issue was in the earlier litigation. Is that accurate? I don't think so, Your Honor, because the way it relates is because the supplemental benefit that was established by the settlement agreement was as part of a compromise of the dispute in the 1998 action about whether benefits had been withheld or not. Okay, I understand that, but it isn't simply a reinstatement of saying, okay, you're complaining about X and now we're going to do X. That isn't what happened. If Your Honor is saying this current alum litigation does not contain the exact same dispute... I'm saying the settlement agreement doesn't simply correct the wrong that was alleged earlier. It does something different. It doesn't for that reason, but it's not the same thing. Well, I disagree, Your Honor, because the dispute in 1998 was whether or not benefits have been withheld or not, and to resolve that dispute, they've agreed to pay benefits. Right, but counsel, you're describing it at such an abstract, generalized level. There was a particular claim that had to do with whether certain elements should be included in the compensable earnings figure, and that was a California case, and this other thing is completely unrelated to that, the compensable part, whether certain things should be included in that. This thing is related to whether they underfunded the amount that was supposed to go to the post-82 group, and that claim didn't underlie the 1998 litigation. It doesn't have to for purposes of the exclusion, the way the exclusion reads, and if I could back up to explain my answer a little bit. So if you look at the 1998 action, and for example, paragraph 26 in the 1998 action says, unless the retirement system is commanded by this court to include the cash payments described above and calculating the retirement benefits of petitioners, those individual petitioners will receive inferior benefits, and it goes on to say they will be deprived of their vested statutory contractual rights. Was the result to include those cash benefits? No. And we don't even know what the relationship is between the settlement agreement and what would have happened if you included the cash benefits. It was just a settlement where some benefits were put into effect, but whether they actually reflect those cash benefits that should have been included before. But no, never mind, nobody much care. Your honor, respectfully, on ER0967, which is the 2001 settlement agreement, in paragraph 3, it specifically says that this settlement agreement compromises the issues raised in the 1998 action. So it didn't say, so the compromise wasn't we're going to pay you, we're going to put into the mix, we're going to reimburse you for what you claimed was wrong before, it said we're just going to redo the whole thing and give you some additional benefits and give some other people some benefits. So there's nothing, what in this action, the current underlying action, has any factual overlap other than the agreement itself with the earlier case? Well, the underlying action, the current underlying action arises out of the allegation of withholding of benefits that is in the 1998 case. That's what the policy requires. Now, if this case was, you know, if the 1998 action hadn't been filed in 1998, if it had been filed in 2006, we wouldn't be here because the exclusion doesn't go back that far. I mean, it doesn't, yeah, it wouldn't apply temporally, but it does. And if you look at the terms of the hypothetical that I asked before, if there were a individual who weren't in the pre-82 class, post-82 class, but didn't start working at the I know there's some cutoff time in 2013, but say 2010, but the benefits that he wanted were the ones in the settlement agreement. And he was claiming it was a breach of judiciary duty and not paying him. Wouldn't you have the same problem? Well, the candid answer is I don't know, because you have to look at, it's a very... on the settlement agreement, even if he wasn't in the settlement, if he wasn't around at the time. Well, it depends. I mean, here you have a very, very close link. And if you look at all of the, you don't have to take my word for it. You can take SJ Serra's word for it and the underlying action. When they file their demurs, when they sent letters in the underlying action, the trial court's order and the underlying action, everybody goes back to the settlement agreement, which fast forward many years later was breached. So to answer your question, you really have to look at the specific circumstances. Here we have a very, very close relationship based on the facts at issue here. Now, if you have a hypothetical with respect to somebody, you know, who retired in 2010, that's, I just can't answer that question without more specificity in terms of examining the facts and determining how the 2001 settlement agreement plays in. But here it just plays in extremely close. It's front and center. It is front and center. And I... Do you want to address the other exclusion? I do, Your Honor, but may I address something else Your Principles. Your Honor made a comment about whether or not the possibility of a claim evolving into a covered one could trigger a duty to defend, or at least that's how I understood Your Honor's question. And under California law, that cannot happen. California law... I was really, I think, making your point. I thought it was the standard to mean that we don't interpret the policy ourselves, that we just think about how somebody might interpret the policy. That's not the give. The give is in what the underlying case might possibly cover. But we still have to interpret the agreement. That's my understanding. We don't say, well, we're not sure what the you know, there is a duty to defend. I don't think that's true. It sometimes gets mushed up, but... That's... You're right that you need to look at the policy language and apply the policy language to the facts. And to respond to one of S.J. Serra's counsel's arguments, the term arising out of it is not ambiguous. It's not. It's a judicially defined term. California law is very clear that when a judicially defined term exists in an insurance policy, that's the meaning given to that term. It's not ambiguous. And so you therefore never get to the rule that you construe the exclusion narrowly against the insurer. That rule only exists where there's an ambiguity and the court is trying to figure out how to interpret the term. Where the exclusion is plain and unambiguous, as the term arising out of is here, that term and that exclusion is given its literal effect. That's rock solid California law. I would also like to discuss one point raised in the briefs, which was by S.J. Serra or Meekie, that suggests that the court should somehow take into consideration public considerations when interpreting this agreement. And the California Supreme Court has said very, very clearly on multiple occasions that it does not rewrite an insurance policy for any reasons, including public policy considerations. So to the extent that's being suggested by S.J. Serra or Meekie, that's just flat contrary to California rules of insurance policy interpretation. Counsel, let me a couple of questions here in regards to the briefs. Your opposing counsel sets forth in the brief, I think, three examples of where they're arguing that your interpretation is off base, let's put it that way. And you did not respond to that in your brief. So I would ask you, can you give me an example from your position of a situation where a person would come under and receive the benefits that you're saying they don't get under your policy? Well, for example, the underlying alum litigation only pertains to the withholding of the supplemental benefit. But there could be all sorts of litigation regarding non supplemental benefits. The base benefits is something that could be litigated. There could be alleged violations of privacy. There could be, like I said before, a previous case that was filed in 2006 or forward. That does not fall under the exclusion. But you contend that anything that is alleged to be in violation of the 2001 settlement agreement would be excluded. I think it depends on the facts of the case. So here you have a defined, it's just the post 82 group. This is just the post 82 groups. These are people who were retired and in existence at the time the settlement agreement was signed and created. Okay, but how does that distinction if there is one account for the language? In that the settlement agreement exists because of the facts that were alleged, as I understand it, in the earlier 1998 litigation. So why would you then, if that's connected, and then how could you distinguish some violations of the settlement agreement from other violations of the settlement agreement? I mean, your fundamental point is that it's the settlement agreement that traces back to the 1998 litigation. So how do you start distinguishing within it? You're right. You're right that at some point in time you have to draw a line. And it kind of depends. That's why I say it depends on the facts of each case. There's a continuum, right, about, you know, in terms of the relationship and arising back. But I don't know if those other circumstances are not, you'd have this being front and center like you do here. Like the settlement agreement is right at the heart of everything and everybody acknowledges it. Well, the settlement agreement is going to be at the heart of anybody who's complaining about a benefit that's provided for the settlement agreement. Well, I will say this. So, you know, Estée, Sarah has argued that travelers accepted a defense of a different claim that somehow was impacted by the settlement agreement. But if you look at that complaint, there's no mention of the 2001 settlement agreement in there. So if there was some kind of relationship in that other case, that was a very tangential relationship that no one could even tell from the pleading. So it's a very uncertain line that you draw. But here, it is certain just because of how the facts are set up in this case. All right. Well, thank you, Mr. Bust. You're over your time. And I think Mr. Boris had two minutes left. You're muted, Mr. Boris. It happens more frequently than I wanted to. Thank you, Your Honor. I'm going to keep this brief unless Your Honors have any specific questions. I think Senator Berzone hit on an important point. I don't think there is any linkage between the benefits that are in the settlement agreement itself and what was alleged, the facts underlying alleged the prior litigation. I think that's an important point. I think that Mr. Bose was... The linkage is that you would have had agreement otherwise. That's fine. That's it. That's all that is. And I think that the scenarios that we were discussing about whether or not there was going to be, would not fall within the 2001 settlement agreement, I think I would just disagree with Mr. Bose entirely. That settlement agreement covered all active and future members. Their retirement benefit formula was dependent on that 2001 settlement agreement. And to the extent he's trying to rely on the other claim to make a point, I would disagree. If anything, the benefited issue there was directly under that 2001 settlement agreement. Finally, I think the important point here that Your Honors have hit on is there's just no relationship at all between the facts underlying or alleged in two pieces of litigation. The 2017 litigation was about administrative decisions. It was about allocation of reserves. It was about adoption of policies. There was nothing there about Ventura. There was nothing in there about the calculation of compensation earnable. And with that, unless Your Honors have any questions. Well, yes, very briefly, and then we just want to talk about the other provision. I gather that the district court concluded that it didn't apply, and I gather it's your position that it doesn't apply, and Mr. Bose didn't want to argue about it. So I guess we're in the position of thinking it doesn't apply, and exactly why. I agree, but let me give you a couple reasons why. First of all, it was waived because it was not raised on a protective cross Secondarily, the allegations in the Allum litigation are the exact opposite. There's no allegation that there was inadequate funding of the benefit plan. It's the exact opposite. The allegation is that the benefit plan was adequately funded, but because of allocation reserve decisions, there was not excess earnings sufficient to pay the benefit. And so I would posit to Your Honor that basically the allegation about inadequate funding is in fact exactly the opposite. The allegations are that SJCERA was adequately funded to pay this benefit. It just didn't pay it? No, the supplemental benefit went through a complicated actuarial formula to determine whether or not there were excess earnings. That's why you'll see, for example, allegations about reserve decisions that were made a decade before this Allum litigation was actually filed. I mean, there's some complexities there. You're talking about reserve allocation decisions in 2005 or 2006, but the benefit, there were no excess earnings that didn't arise for purposes of litigation until 2017. All right. Thank you, counsel. SJCERA versus Traveler's We will take a green versus mercy policy.
judges: Baldock, Wardlaw, Berzon